COHAN et al. v. ROSENBERG et al.

(Supreme Court, Appellate Term. November 22, 1910.)

1. CONTRACTS (§ 147*)—CONSTRUCTION—INTENTION OF PARTIES.

The intention of parties to a written contract, as expressed in the words used, governs in the construction of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

2. CONTRACTS (§ 246*)—DISCHARGE BY SUBSEQUENT AGREEMENT.

A contract for the construction of buildings, which, in addition to the provisions for the work contains guaranties by the contractor as to the plumbing, the steam plant, etc., is not, as to the guaranties, discharged by a subsequent agreement reciting the settlement of a dispute between the parties and the payment by the owner of a specified sum for his discharge under the original contract, and stipulating for delivery by the contractor to the owner of enumerated guaranties; but the contractor remains liable under the original contract until he delivers the guaranties called for by the subsequent agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1131–1138; Dec. Dig. § 246.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Nathan H. Cohan and another against Morris Rosenberg and another. From a judgment for defendants, entered on a trial without a jury, plaintiffs appeal. Reversed, and new trial ordered.

Argued before SEABURY, PAGE, and BIJUR, JJ.

Spiro & Wasservogel (Abraham I. Spiro, of counsel), for appellants.
Rosenthal & Steckler (David Steckler and Max Tachna, of counsel), for respondents.

PAGE, J. On January 28, 1909, the plaintiffs and defendants entered into a written contract for the reconstruction of certain buildings, known as Nos. 113 and 113½ Bowery, theretofore destroyed by fire. This contract not alone provided for the erection of the buildings and the payments to be made, but contained the following guaranties:

"Eleventh. The contractors agree to and do hereby guarantee the electric elevator and all its appurtenances and equipments and all electric light wiring and fixtures to be in perfect and easy working and running order, and to remain in such perfect and easy working and running order for the term of one year from May 1, 1909; and should the same or any part of such equipment be found to be defective after the completion of the building, they agree to replace the same with new and perfect material or parts, and agree to

---

make all repairs thereto at their expense, for the said term of one year. Con-
tractors shall also procure and furnish all required certificates.

"Twelfth. It is further expressly agreed that all materials used for said
construction, inside or outside of said building, shall be new and first-class
material.

"Thirteenth. The contractors guarantee to maintain the plumbing in the
building in first-class condition for the period of one year, and also guarantee
to maintain and keep the roof in repair at their own cost for the period of
one year from May 1, 1909. The contractors also guarantee the steam plant
and all its appurtenances to be in first-class working order and condition, and
to supply the heat mentioned in the specifications for the term of one year
from May 1, 1909.

"Fourteenth. All guaranties provided for in this contract shall survive the
completion of the building and all payments to be made hereunder."

On the 29th day of October, 1909, the parties hereto entered into
another written contract, which recited the agreement of January 28,
1909, that certain disputes have arisen between the parties with respect
to the reconstruction of said buildings, that the said disputes had been
submitted to arbitration, that the arbitrators had awarded the defend-
ants $2,640, and in consideration of the settlement of said disputes and
the payment of said sum "the parties of the first part hereto" (the
defendants) "hereby release and discharge the parties of the second
part of and from said agreement of January 28, 1909, and of and from
any and all agreements, claims, and demands whatsoever arising or
that may arise out of the transactions had between the parties hereto
on or relating to said rebuilding of the premises 113 and 113½
Bowery, and of and from any and all claims and demands whatsoever
in law or in equity to the date hereof," and contains the following
clauses:

"The parties of the first part do hereby transfer and assign unto the par-
ties of the second part the following guaranties and all their right, title, and
interest in and to each and every one of said guaranties, to wit: The guar-
anty of the Drum Elevator Company to keep the elevator and equipment in
said building in repair against general wear and tear for one year from May
1, 1909. The guaranty of I. Block to keep the roof in repair for one year
from May 1, 1909. The parties of the first part agree to deliver unto parties
of the second part the above guaranties, and all the other guaranties provided
for in paragraphs 11, 12, 13, and 14 of said contract of January 28, 1909, and
until such delivery, or in default of such delivery, the parties of the first
part will remain, and hereby agree to remain, liable on said guaranties men-
tioned in said agreement of January 28, 1909. The parties of the first part
further covenant and agree to indemnify, save, and hold the parties of the
second part harmless from any liens or claims which may be made against
them and against the said building 113 and 113½ Bowery, by reason of the
work and labor done or materials furnished thereon by the parties of the
first part, in connection with said job of the rebuilding of said premises; and
except as herein mentioned and reserved each of the parties hereto release
the other from any further claims and demands whatsoever."

The complaint in this action alleges the making of the agreement of
January 28, 1909; recites the guaranties therein above set forth; that
plaintiffs performed said agreement, and every part thereof, on their
part to be performed; that between the 1st day of August, 1909, and
the 1st day of May, 1910, the said elevator and the equipment and
appurtenances were found to be and became defective and out of
working order, and the roof of the buildings were found to be de-
fective and in a leaking condition; that plaintiffs, at divers times, noti-

fied the defendants of such defects, and demanded of the defendants the repair of the same at their (the defendants') expense, but that defendants failed and refused to make such repairs; and that plaintiffs made said repairs at an expense to them of $279.88, the reasonable cost and value thereof, and demanded payment of the same from the defendants; and their failure to pay. The answer sets up the agreement of October 29, 1909, as a release and discharge of the contract of January 28, 1909. On the trial the learned justice held with the defendants, finding as a matter of law that the agreement of January 28th was released and discharged by the agreement of October 29th, and that any right of action on the part of the plaintiffs against these defendants under the first agreement ceased; and the cause of action between the parties over this transaction arises under the second agreement, and that the second agreement is substituted for the original contract, which is abrogated and released thereby. As no evidence was given, save the offering of these two agreements, the sole question to be considered on this appeal is this decision.

From an examination of the contract of January 28th, we find therein two separate agreements: One for the reconstruction of the buildings, that would be satisfied by the performance of its conditions, the construction of the buildings by the defendants, according to the plans and specifications, and the payment of the sums agreed to be paid by the plaintiffs; the other, the guaranties set forth in the eleventh and thirteenth paragraphs thereof, which would be satisfied by the maintenance in good order and repair of the parts of the buildings and their equipment therein specified for the term of one year from May 1, 1909, which the contract expressly provided (paragraph 14) "shall survive the completion of the building and all payments to be made hereunder."

Had the buildings been completed and payments made in accordance with the terms of the contract in that behalf, no one could have claimed that the guaranties were satisfied and released, or an accord and satisfaction was had as to them, without doing violence to the expressed terms of the contract. The disputes of the parties, as appears from the contract of October 29th, related to the first agreement contained in the contract of January 28th, and the payment of amount awarded was an accord and satisfaction of that portion of the said contract. The release therein contained was a release of the plaintiffs from all claims and demands of the defendants, and not a release and discharge of the claims and demands of the plaintiffs against the defendants on account of the guaranties constituting the second agreement, unless such is found to be the intention of the parties from a consideration of the latter portion of the contract of October 29th. Upon turning to the last clause of the said contract, we read:

"And *except as herein mentioned and reserved* each of the parties hereto release the other from any further claims and demands whatsoever."

This exception and reservation referred to the agreement of the defendants to assign and deliver to the plaintiffs the guaranties of Drum Elevator Company, I. Block, and the delivery of their per-

sonal guaranties provided for in sections 11, 12, 13, and 14 of the contract of January 28th, "and *until such delivery*, or in default of such delivery, the parties of the first part" (the defendants) *"will remain, and hereby agree to remain, liable* on said guaranties mentioned in said agreement of January 29, 1909."

It is a fundamental rule for the construction of a written contract that the intent of the parties as expressed in the words they have used must govern. It seems to us clear that it was the intent of the parties as expressed in the words of this contract that defendants were to remain liable on the guaranties contained in the original contract until they delivered to the plaintiffs the additional guaranties called for by this contract and re-executed and delivered their own guaranties set forth in the original contract.

If it was the intention of the parties that this contract was to operate as a release, in præsenti, from the conditions of the original contract, so that no cause of action would arise under the original contract in favor of the plaintiffs, and reduce that contract to a mere evidentiary paper, from which the contract of October 29th might be made clear, as the learned justice held, why would the parties provide for a subsequent delivery of those very guaranties by defendants to plaintiffs? There remained something to be done under the contract of October 29th. The assignments were to be executed and delivered, and the guaranties delivered. The contract was therefore executory, and did not operate as a release and satisfaction until it was executed. Until that time the defendants were liable on the guaranties in the contract of January 28th.

The judgment should therefore be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.